(169 App. Div. 492)

### In re COHEN.

(Supreme Court, Appellate Division, First Department.  November 5, 1915.)

ATTORNEY AND CLIENT ⬤⟐44—DISBARMENT—MISAPPROPRIATION OF FUNDS.

Where an attorney at law, acting for the trustee of a bankrupt, received moneys belonging to claimants against the estate of the bankrupt and commingled them with his own funds, converting them to his own use, and having at no time a sufficient amount of money to pay the full amount due the claimants, but admitting his liability to them and exhibiting no intention of permanently appropriating the money, his conduct does not warrant disbarment, but the penalty will be reduced to severe censure.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. ⬤⟐44.]

Proceeding by the Association of the Bar of the City of New York against J. Quintus Cohen, an attorney and counselor at law, for professional misconduct.  Respondent severely censured.

See, also, 164 App. Div. 947, 149 N. Y. Supp. 1076.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (John G. Jackson, of New York City, of counsel), for petitioner.

Michel Kirtland, of New York City, for respondent.

PER CURIAM.  This is a disciplinary proceeding, prosecuted by the Association of the Bar of the City of New York against the respondent, who has been a member of the bar for upwards of 25 years. The undisputed evidence shows that the respondent has been guilty of an offense which we have frequently condemned in unequivocal language, to wit, that of appropriating to his own use the money of his clients.

In May, 1913, a proceeding in bankruptcy was pending in the United States District Court, based on a petition prepared in respondent's

office and filed by him as attorney for the petitioning creditors. Prior to that time respondent had represented the company or its owners as its general attorney and counsel. The receiver appointed in the bankruptcy proceeding retained respondent as his counsel, and, after being appointed trustee, continued the retainer. Among the creditors of the company were six employés, all Greeks, only one of whom, a man named Chiricos, could speak English with any degree of fluency. Shortly after the Star Candy Company had gone into bankruptcy, one of the owners of the concern brought these Greeks down to respondent's office for the purpose of having claims prepared and presented against the company.

Respondent, being at that time the attorney for the receiver, considered that he could not also appear as attorney for the Greek claimants, and so turned them over to a Mr. Hall, a friend and former business associate, who prepared and filed the claims. While the Greek claimants were formally represented by Mr. Hall as their attorney, it seems quite clear that it was respondent upon whom they relied, and that he so understood. Indeed, when dividends were declared some time afterwards, Mr. Hall turned the dividend checks over to respondent, leaving it to him to settle with the claimants. The men were sent for, and instructed to sign the checks and return them to respondent for collection. This they did, and respondent deposited the money in his own account in the bank, commingling it with his own funds. This was about the 1st of June, 1913. On July 29, 1913, Chiricos received from respondent a check for $36.49, being one-half of the dividend allowed on his claim. Payment of this check was refused by the bank for lack of funds. Later, on August 29, 1913, respondent gave Chiricos another check for the same amount, which was paid.

There seems to have been a dispute between respondent and the two Greeks, whose cases were dwelt upon before the referee, as to the amount of fees; respondent claiming to be entitled to one-half of the dividends, although no agreement to that effect had previously been made. The result was that from May to August these men were unpaid. In the meantime respondent had deposited their checks in his own account, and had spent or used the money for his own purposes; his balance in the bank being almost continuously less than what he admitted to be due to the claimants.

It would not be a fair inference from the evidence that respondent intended at any time to permanently misappropriate the amounts which he admitted to be due to the claimants, but he was certainly censurable for the careless manner in which he handled the money intrusted to him, and for so dealing with it that it might have been lost to the claimants, who had trusted him, and whom he had undertaken to serve. The amounts involved were small, and it is probable that there was at no time any appreciable danger that respondent could not eventually and by some means, even if he had not the money in the bank, have made out to pay the claimants what was due them; but he should have realized that his ability to pay the money of another, which

he had misappropriated, was not equivalent to keeping it safely and apart from his own funds, as it was his clear duty to have done.

That the respondent was guilty of professional misconduct cannot be denied; but, in view of the apparent absence of a dishonest motive, we are of opinion that it will be sufficient if he is severely censured for his unprofessional and blameworthy conduct. It is so ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.